UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



**FILED**

JUN 08 2012

********************************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 12-30021-RAL |
| | * | |
| Plaintiff, | * | |
| | * | **REPORT AND RECOMMENDATION** |
| -vs- | * | **FOR DISPOSITION OF MOTION** |
| | * | **TO DISMISS INDICTMENT** |
| BURTON WILBUR KING, | * | |
| | * | |
| Defendant. | * | |
| | * | |

********************************************************************************

## SUMMARY

Burton Wilbur King moves to dismiss the Indictment charging him with violating the Sex Offender Registration and Notification Act (SORNA). He argues that Congress unlawfully delegated to the Attorney General the task of determining whether SORNA and its requirements applied to pre-Act offenders, like himself. While he may have standing to challenge the Act on non-delegation grounds, his argument cannot succeed because Congress provided "intelligible principles" to limit the Attorney General's discretion so as to make any grant of discretion constitutionally-acceptable. The Court therefore recommends that his dismissal motion be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

King was convicted of aggravated sexual abuse (18 U.S.C. §§1153, 2241(c) and 2245(2)(A)) in United States District Court for the District of South Dakota on May 14, 1993.[1] He received a 108-month custody sentence followed by three years of supervised release.[2]

In July, 2002, King's supervised release was revoked but he was placed back on supervised release for a period of 20 months.[3] As part of his release conditions, he was ordered to register as a sex offender.[4] His supervised release was revoked again about three-and-a-half years later and this time he was sentenced to serve a 20-month prison term.[5]

On February 14, 2012, King was indicted for failure to register as a sex offender.[6] It is this Indictment that he now seeks to dismiss.[7]

King's motion to dismiss is premised on the non-delegation doctrine derived from Article I, Section 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States . . . . ") and Article I, Section 8, Clause 18 ("The Congress shall have . . .

---

[1]See CR. 93-30003-CBK, Dkt. No. 22.

[2]Id.

[3]Id. at Dkt. No. 50.

[4]Id. at 2.1, ¶9 (Special Conditions of Supervision).

[5]Id. at Dkt. No. 69.

[6]See CR. 12-30021-RAL, Dkt. No. 1.

[7]Id. at Dkt. Nos. 21, 22.

2

all other Powers vested by this Constitution and the Government of the United States, or in any Department or Officer thereof.") of the Constitution.[8]  He claims that Congress violated this doctrine by delegating to the Attorney General the power to determine SORNA's applicability to pre-Act offenders.[9]  Specifically, he contends that Congress failed to articulate any standard or intelligible principle to guide the Attorney General on the retroactivity of the Act.[10]

The Government has filed a response to King's motion, resisting the same.[11]  In its response, the Government asserts that Congress did not impermissibly delegate legislative functions to the Attorney General, namely, the discretion to determine whether SORNA's registration requirements would apply to sex offenders convicted prior to the Act's amendment.[12]

## STATUTORY AND REGULATORY OVERVIEW

SORNA became law on July 27, 2006.[13]  It "requires those convicted of certain sex crimes to provide state governments with (and to update) information such as names and

---

[8]*See id.* at Dkt. No. 21.

[9]*Id.*

[10]*Id.*

[11]*See id.* at Dkt. No. 23.

[12]*Id.*

[13]*See United States v. Knutson*, No. 11-1975, 2012 WL 1957844 at *1(8th Cir. June 1, 2012).

current addresses, for inclusion on state and federal sex offender registries."[14]  Under

SORNA, any person who (1) is required to register under [the Act]"; (2) "knowingly travels

in interstate or foreign commerce," and (3) "knowingly fails to register or update a

registration as required by [the Act]" is guilty of a crime punishable by fine and

imprisonment for up to 10 years.[15]  The registration requirement is spelled out in 42 U.S.C.

§16913 and permits the Attorney General to "specify the applicability of the requirements

of this subchapter to offenders convicted before the enactment of this chapter."[16]  42 U.S.C.

§16912(b) also instructs the Attorney General to "issue guidelines and regulations to

interpret and implement this subchapter."

On February 28, 2007, the Attorney General issued an interim rule making SORNA

immediately effective "to all sex offenders, including sex offenders convicted of the offense

for which registration is required prior to the enactment of [the] Act."[17]  The Attorney

General opined that the rule qualified for the "good cause" exception to the procedural

requirements of the Administrative Procedure Act but nonetheless announced that he

would accept comments until April 30, 2007.[18]

---

[14]*Reynolds v. United States*, 132 S.Ct. 975, 978-79 (2012).

[15]18 U.S.C. §2250(a).

[16]42 U.S.C. §16913(d).

[17]72 Fed. Reg. 8894, 8897 (Feb. 28, 2007) (codified at 28 C.F.R. §72.3).

[18]*See* 72 Fed. Reg. at 8895-97; 5 U.S.C. §553(b)(3)(B).

A short time later, the Attorney General published proposed guidelines from the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART guidelines").[19]   The SMART guidelines stated that they were promulgated pursuant to the Attorney General's authority under §16912(b) to interpret and implement SORNA and restated the Attorney General's position that the Act applied to all sex offenders, "including those whose convictions predate the enactment of the Act."[20]

After a period for public comment, the Attorney General published the final version of these SMART guidelines on July 2, 2008.[21]   In this version, the Attorney General reaffirmed that SORNA covered pre-Act offenders.[22]  The final guidelines became effective on July 2, 2008 – the date of their publication.[23]

In December 2010, the Attorney General responded further to comments he had received and "finaliz[ed] the interim rule to put to rest any doubts regarding the retroactivity of SORNA.[24] This latest rule went into effect on January 28, 2011, 30 days after its publication.[25]

---

[19]See 72 Fed. Reg. 30210 (May 30, 2007).

[20]Id. at 30210, 30212.

[21]See 73 Fed. Reg. 38030 (July 2, 2008).

[22]Id. at 38046.

[23]Id. at 38030.

[24]See 75 Fed. Reg. 81849, 81850 (Dec. 29, 2010).

[25]Id. at 81850.

## STANDING

Previously, the Eighth Circuit Court of Appeals held that pre-Act offenders lacked standing to challenge SORNA.[26] The Eighth Circuit joined four other circuits that similarly held that SORNA's registration requirements "apply from the date of the Act's enactment . . . to pre-Act offenders who had already registered under state law."[27] Six other circuits, however, determined "that the Act's registration requirements do not apply to pre-Act offenders unless and until the Attorney General so specifies."[28]

Earlier this year, the United States Supreme Court resolved this circuit's split in favor of the latter approach (taken by the majority of appeals courts – but not the Eighth Circuit).[29] While deciding that pre-Act offenders had standing to challenge SORNA, the Court did not indicate whether their challenges would be successful.[30]

---

[26]*See e.g. United States v. May*, 535 F.3d 912, 921 (8th Cir. 2008) *abrogated in part by Reynolds v. United States*, 132 S.Ct. 975 (2012); *United States v. Mefford*, 417 Fed. Appx. 586, 587 (8th Cir. 2011), *cert. granted and judgment vacated*, 132 S.Ct. 1536 (2012); *see also United States v. Voice*, 621 F.Supp.2d 741, 749 (D.S.D. 2009), *aff'd*, 622 F.3d 870 (8th Cir. 2010), *cert. denied*, 131 S.Ct. 1058 (2011).

[27]*Reynolds*, 132 S.Ct. at 980.

[28]*Id.*

[29]*Id.* at 984.

[30]*See id.* (remanding the case for further proceedings).

In view of the Supreme Court's pronouncements, it is clear that King, a pre-Act offender, has standing to contest the applicability of SORNA's registration requirements. And this includes the right to challenge the Act on delegation grounds.[31]

## NON-DELEGATION DOCTRINE

King maintains that Congress delegated to the Attorney General the legislative task of determining the retroactive application of SORNA to pre-Act sex offenders without any standard or intelligible principle to guide the Attorney General.[32]  He says that this delegation was unconstitutional, that the Act never became applicable to him and that he cannot be convicted of failing to register as a sex offender under it.[33]

"The non-delegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of government."[34]  The doctrine holds that "Congress manifestly is not permitted to abdicate or to transfer to others the essential legislative functions with which it is [constitutionally] vested."[35]  But "Congress may delegate its

---

[31]See Reynolds, 132 S.Ct. at 984; Knutson, 2012 WL 1957844 at *1; United States v. Sharp, No. 11-3562, 2012 WL 1382429 at *1 (8th Cir. April 23, 2012), cert. denied, No. 11-10125, 2012 WL 1565966 (U.S. June 4, 2012); United States v. Chronister, No. 11-3357, 2012 WL 1395603 at *1 (8th Cir. April 23, 2012), cert. denied, No. 11-10147, 2012 WL 1566213 (U.S. June 4, 2012); United States v. Mefford, No. 10-2131, 2012 WL 1059019 at *1 (8th Cir. Mar. 30, 2012); United States v. Fernandez, 671 F.3d 697, 698 (8th Cir. 2012), cert. denied, No. 11-10151, 2012 WL 1566218 (U.S. June 4, 2012).

[32]See Dkt. No. 12.

[33]Id.

[34]Mistretta v. United States, 488 U.S. 361, 371 (1989).

[35]Panama Refining Co. v. Ryan, 293 U.S. 388, 421 (1935).

legislative power if it 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform."[36] A statute will survive a non-delegation challenge and be "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority."[37] The "intelligible principle" can be broad.[38] Notably, Congress has been given wide latitude in the delegation area and since 1935 has not had a single one of its statutes overturned as an unconstitutional delegation of legislative power.[39]

The Court here is satisfied that there are sufficiently "intelligible principles" to guide the Attorney General in the exercise of his discretion when promulgating rules and otherwise administering the application of SORNA. Not only has Congress provided the

---

[36]*South Dakota v. United States Dept. of Interior*, 423 F.3d 790, 795 (8th Cir. 2005) (alterations in original) (*quoting J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928)), *cert. denied*, 549 U.S. 813 (2006); *see also Touby v. United States*, 500 U.S. 160, 165 (1991).

[37]*American Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946); *see also Mistretta*, 488 U.S. at 372-73.

[38]*See e.g. Whitman v. American Trucking Associations*, 531 U.S. 457, 475-76 (2001) (upholding against a non-delegation challenge a statute that granted the EPA broad discretion to set national ambient air quality standards at levels "requisite to protect the public health."); *Yakus v. United States*, 321 U.S. 414, 420 (1944) (upholding a delegation to fix commodity prices that are "generally fair and equitable and will effectuate the purposes of this Act"); *Federal Power Comm'n v. Hope Natural Gas Co.*, 320 U.S. 591, 600 (1944) (upholding a delegation to the Federal Power Commission to determine "just and reasonable rates"); *National Broadcasting v. United States*, 319 U.S. 190, 225-26 (1943) (sustaining a delegation to the FCC to ensure that broadcast licenses were granted as "the public interest, convenience, or necessity require").

[39]*See Mistretta*, 488 U.S. at 373-74; *United States v. Whaley*, 577 F.3d 254, 263 (5th Cir. 2009).

Attorney General with a policy framework in 42 U.S.C. §16901 to guide his discretionary authority under §16913(d), but it has also made a series of legislative judgments in §§16911, 16913, 16914 and 18 U.S.C. §2250 that circumscribe the Attorney General's discretion to a narrow and prescribed category.[40]

At the outset, Congress created SORNA with a specific design in mind: to provide the broadest possible protection to the public and to children in particular, from sex offenders. §16901 expressly states the congressional purpose in these terms: "In order to protect the public from sex offenders and offenders against children and in response to the vicious attacks by violence predators against the victims listed below, Congress . . . establishes a comprehensive national system for the registration of those offenders . . . ." The Attorney General's exercise of discretion is adequately cabined by this clear statement of purpose.[41] Congress recognized that combining the registry systems of 50 states presented "precisely the sort of intricate, labor-intensive task for which delegation to an expert body is especially appropriate."[42] It wanted the Attorney General to address this logistical problem and granted him, as part of its delegation of authority, the discretion to determine when and how SORNA would apply to pre-Act offenders. The notion that the Attorney General could create a comprehensive system without applying SORNA to these offenders was, as the Supreme Court in *Reynolds* tactfully put it, an "unrealistic

---

[40]*See United States v. Ambert*, 561 F.3d 1202, 1213 (11th Cir. 2009).

[41]*United States v. Rogers*, No. 10-5099, 2012 WL 698890 at *2 (4th Cir. Mar. 6, 2012), *petition for cert. filed*, No. 11-10450 (U.S. May 16, 2012)

[42]*Mistretta*, 488 U.S. at 379.

9

possibility."[43]   Indeed, to exempt pre-Act offenders, would both ignore and frustrate Congress's mandate to register *all* offenders across the country.

Furthermore, and perhaps more importantly, because "Congress made virtually every legislative determination in enacting SORNA" the Attorney General's discretion is harnessed.[44]   For example, Congress defined the crimes which necessitate registration;[45] where the offender must register;[46] the time period for registration;[47] the method of registration;[48] the nature of information that registrants must provide;[49] as well as the elements of this new crime and the penalty for violating it.[50]   These legislative determinations, read in conjunction with §16913(d), provide informed delegation to the Attorney General and leave him only with the discretion to decide whether this statute and all its attendant requirements apply to a particular finite class of offenders – those convicted before July 27, 2006.[51]

---

[43]*Reynolds*, 132 S.Ct. at 984.

[44]*See Ambert*, 561 F.3d at 1214.

[45]*See* 42 U.S.C. §16911.

[46]*See* 42 U.S.C. §16913(a).

[47]*See* 42 U.S.C. §16913(b)

[48]*See* 42 U.S.C. §16913(b), (c).

[49]*See* 42 U.S.C. §16914(a)(1)-(7).

[50]*See* 18 U.S.C. §2250(a).

[51]*See United States v. Guzman*, 591 F.3d 83, 93 (2d Cir.), *cert. denied*, 130 S.Ct. 3487 (2010); *Whaley*, 577 F.3d at 264; *see also United States v. Stevenson*, 676 F.3d 557, 565-66
(continued...)

Finally, the Court joins every other appeals and district court which has directly addressed the non-delegation issue and rejected it.[52] And the Court echos its prior sentiments expressed on this issue[53] and likewise joins the fresh opinion of its sister court in the Southern Division of this District which too has squarely passed on the issue and found the same to be without merit.[54]

## CONCLUSION

King has standing to challenge SORNA under the non-delegation doctrine. His challenge though must fail. Congress did not violate the doctrine when it delegated to the

---

[51](...continued)
(6th Cir. 2012), *petition to cert. filed*, No. 11-10520 (U.S. May 23, 2012); *Ambert*, 561 F.3d at 1214.

[52]*See e.g. United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012); *Rogers*, 2012 WL 698890 at *2; *Guzman*, 591 F.3d at 91-93; *Whaley*, 577 F.3d at 263-64; *Ambert*, 561 F.3d at 1212-15; *United States v. Dixon*, 551 F.3d 578, 583-84 (7th Cir. 2008), *rev'd on other grounds by Carr v. United States*, 130 S.Ct. 2229 (2010); *United States v. Mee*, No. 5:11-CR-101, 2012 WL 1638436 at *5 (D. Vt. May 9, 2012); *United States v. Goodwin*, No. 11-20036, 2012 WL 984268 at **2-3 (C.D. Ill. Mar. 22, 2012); *United States v. Sudbury*, No. 11-cr-5536 RBL, 2012 WL 925960 at **2-4 (W.D. Wash. Mar. 19, 2012); *United States v. Kuehl*, No. 11-CR-3053-LRR, 2012 WL 844321 at *3 (N.D. Iowa Mar. 12, 2012); *United States v. Lunsford*, No. 11-00175-01-CR-W-GAF, 2012 WL 828039 at **5-6 (W.D. Mo. Feb. 28, 2012), *report and recommendation adopted by* 2012 WL 827590 (W.D. Mo. Mar. 8, 2012); *United States v. Rand*, No. EP-11-CR-2727-PRM, 2012 WL 195017 at *4 (W.D. Tex. Jan 23, 2012); *United States v. Sherman*, 784 F.Supp.2d 618, 621-22 (W.D. Va. 2011); *United States v. Cotton*, 760 F.Supp.2d 116, 134-35 (D. D.C. 2011).

[53]*Voice*, 621 F.Supp. 2d at 758.

[54]*United States v. Black Lance*, CR. 12-40031-LLP, slip op. at 3-7 (D.S.D. May 10, 2012) (Report and Recommendation of Simko, J.)

Attorney General the authority to determine the applicability of SORNA to pre-Act offenders.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that King's Motion to Dismiss Indictment[55] be denied for the reasons, and based on the authorities, stated herein.

## NOTICE

An aggrieved party must file written objections, within 14 calendar days, to challenge this Report before the assigned United States District Judge.[56]

Dated this __8th__ day of June, 2012, at Pierre, South Dakota.

BY THE COURT:

_Mark A. Moreno_

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

---

[55]*See* CR. 12-30021-RAL, Dkt. No. 21.

[56]*See* 28 U.S.C. §636(b)(1).